The next case on the docket is number 519-0543, Francis v. Irvin et al. Arguing for the appellant, Pamela Irvin, is William Thomas. Arguing for the appellee, Mary Francis, is Mike Neal. Arguing for the appellees, Lee and Gisela Zink, is Cara Wade. The appellees have agreed to split their time ten minutes each. Each side will have 20 minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll bang the gavel. And finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. William Thomas Counsel ready for the appellant, ready to proceed? You may go ahead. William Thomas Thank you, your honors. My name is William Thomas and I represent the appellant in this case, Pamela Irvin. May it please the counsel. The first thing I'd like to say is that the main thrust of Pamela Irvin's argument, can you hear me? Okay, go ahead. The main thrust of Pamela Irvin's argument is set forth in her written brief and reply brief. And I'm just going to kind of summarize a little bit today what we've set forth in those documents. Now, your first point is Emerald Lake. Emerald Lake is a man-made lake in Crawford County, Illinois, located about three miles south of Robinson, a town of about 6,000 people. In 1994, Lee Zink and Gisla Zink constructed a lake known as Emerald Lake on a 40 acre tract that they operated. In 1995, the Zinks also created Emerald Lake Estates Subdivision, which adjoined the lake. It's critical to remember in this case that the lake, Emerald Lake, was never a part of the corporation or the subdivision. It originally conveyed one of the lots of the subdivision, lot number 17, to the corporation, which then leased that lot to a fellow named Wyrie. Zinks later on reacquired lot 17. Lots 10 and 11 were sold to Steve and Barbara Cook. At the time, the title was severed between the Zinks and first the corporation, later it's Wyrie, and the Cooks. All of the lots were vacant. No construction, no houses on any of them. Zinks subsequently conveyed lot 17 to Plaintiff Francis, and there is a home on that. Now, in December of 2012, Zinks conveyed by warranty deed to Pamela Irvin 31.74 acres out of the 40 lots of the Emerald Lake Estates Subdivision. The plot of Emerald Lake Estates Subdivision indicated that all of the lots that bordered the lake ended at the water's edge. Now, the deed to Irvin's contained the language that the deed was subject to all restrictions, covenants, and easements of record pertain to the land that Irvin was acquiring, not other land that was nearby. As I said, the lake was never part of the corporation or the subdivision. Irvin is raising four arguments seeking reversal of the trial court decision granting summary judgment in favor of the is chain of title. There is nothing in the chain of title to the property acquired by Irvin to indicate that anyone other than Irvin had any right to the use and enjoyment of Emerald Lake. There's nothing in that deed to indicate. The chain of title to the properties owned by Francis would indicate that Emerald Lake Estates never had an interest in the corporation in the lake. I'm sorry. A lot stopped at the water's edge that he acquired no express interest in Emerald Lake, and there are no express easements, covenants, or reservations granting Francis the use and add, your honors, that subsequently to her acquisition of lot 17, Francis acquired lots 10 and 11. So Francis owns three lots, as leases on three lots, and Zinks owned personally the other 15 lot. The second argument presented by Irvin with respect to requesting a reversal of the trial court decision is the doctrine of riparian rights. Irvin maintains that this is a riparian rights case. Riparian rights consists of the rights of a sure owner as defined by the use of the water adjacent to the land. Francis v. Irvin involves the right of access to Emerald Lake from respective land owned by Francis, Irvin, and Zinks. Riparian rights with respect to natural bodies of water differ from man-made bodies of water. There's a second district case, second position, there are no riparian rights with respect to artificial bodies of water. The Illinois Supreme Court in a more recent case, Alderson v. Fatland, affirmed that holding that there are no artificial or there are no riparian rights to an artificial body of water. The Supreme Court did the case of Rokita v. Hoyer, which is what we discussed later on, and the result in Alderson is opposite the result of Rokita v. Hoyer. So Irvin maintains that the employees have no right to the use and enjoyment of Emerald Lake because it's an artificial body of water, and there are no riparian rights to artificial bodies of water. The third basis for seeking reversal of the trial court decision is the doctrine of implied easements. Trial court in Irvin for Francis v. Irvin found that there was an implied easement granting the employees the right to the use and enjoyment of known as granted properties limited versus mans, and I think that was about 1987 case, discusses what must be shown to establish easement by implication. The trial court at Irvin found that the employees had an easement by implication. Holding in granted properties provides that three elements must be shown to establish an easement by implication. The first is two parcels at the same time had a common owner, unity of ownership, that's present in this case. The second element is before the conveyance of transferred severing unity of title, common owner, in this case the sinks, part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous and permanent. This is not present in Francis v. Irvin. When title was severed from the lake to the three lots owned by Francis, those three lots were vacant lots and there could have been no use of the lake by those vacant lots. And when title is severed with regard to the other 15 lots, when Zinx sold the lake to Irvin, those other 15 lots were vacant. Counsel, was Zinx using the lake? I'm sorry, your honor, I don't hear you. I'm sorry, Zinx, so was Zinx using the lake? Mr. and Mrs. Zinx owned Emerald Lake and 15 lots and they sold Emerald Lake, part of a 31-acre crack, to Irvin. Okay. Okay, was that your question? Did I answer it? Well, that's okay. Yeah, go on, counsel. Thank you. Okay. And the third element that must be established is that the easement is necessary and beneficial to the enjoyment of parcel-conveyed arbitrage. Now, a second case that's significant is the case of Emmanuel v. Hernandez, which held that because the attention of the parties to the conveyance that severs title is a crucial consideration as to whether or not easement exists depends wholly upon the circumstances at the time title is severed. And we're saying that the time, in each case, the lake was severed from a vacant lot. And Emmanuel v. Hernandez goes on to hold that if an easement by implication does not exist at the moment of severance, a change in circumstances, no matter how great, cannot create such an easement by implication. So, as I've already stated, all the lots were vacant, lots by themselves could not derive a benefit from the lake that was apparent and obvious, continuous and permanent. And pursuant to Grant Properties v. Manns and Emmanuel v. Hernandez, there can be no implied easement for the lots located in Emerald Lake Estate subdivision for the use and enjoyment of Emerald Lake. The final grounds for which apparent is criticism of the case of Rokita v. Hoyer. Rokita v. Hoyer, as it applies to implied easements. Grant Properties v. Mann and Emmanuel v. Hernandez were both decided before Rokita v. Hoyer. The decision Rokita v. Hoyer, as it pertains to implied easements, is contrary to the holding of Granted Properties. I've totally believed that Granted Properties spent its attention when this court was deciding Rokita v. Hoyer. Rokita v. Hoyer contains an argument with respect to implied easements. First, I probably need to say that Rokita v. Hoyer involves an artificial body of water known as June Lake. June Lake was conveyed to Rokita. The deed conveying June Lake to Rokita specifically reserved the use and enjoyment of June Lake. The court in Rokita then goes on to talk about applied easements. And in Headnotes 3-10, beginning on page 377, the court cites 10 separate cases. None of the cases cited in Rokita v. Hoyer has any similarity to the facts of Rokita v. Hoyer or the facts of Irvin v. Francis. The case of Alderson v. Fetland, which I referred to earlier, was decided after Rokita. And that, too, is a Supreme Court case, as is Granted Properties. The facts of Alderson and Rokita are similar, but the decision in Alderson is opposite the decision in Rokita. The ruling in Rokita is contrary to the decisions of the Supreme Court in Granted Properties and Alderson v. Fetland. And the Rokita language regarding applied easements should not be followed. Francis v. Irvin followed the holding in Rokita v. Hoyer to rule against Irvin. And it's our contention that it was Irvin's. Again, Your Honors, the bulk of the Irvin presentation is set forth in the written brief and the responsive brief. Irvin hereby humbly requests reversal of the trial court decision and the granting of summary judgment in favor of Irvin. That concludes my argument. Thank you. Thank you, Counsel. Counselor, the penalty is ready, and you're keeping track of your own time, I understand. You may proceed. Mr. Neely, you need to unmute yourself, please. Right. I don't hear anything. Right. There we go. All right. Okay. Thank you. Thank you, Your Honors. May it please the court and counsel. My name is Mike Neal. I am the attorney for Mary Jean Francis, the plaintiff, aptly in this matter. And as has been previously indicated, I will be addressing two issues that have been raised by Attorney Thomas in his argument. One, which he characterizes as a chain of title issue and riparian rights. I will yield at the conclusion of my remarks in regard to those two issues. I will yield to Attorney Kara Wade, who will address issues incidental to the doctrine of implied easements. Now, at the outset, there are two factual matters which I would like to bring to the court's attention, which we believe were incorrectly cited by counsel for the appellant. The first is there was a representation made by Attorney Thomas that Emerald Lake was not part of the subdivision. In fact, Emerald Lake is included on the subdivision plat, which was submitted to the County Board of Crawford County, Illinois, and approved by the County Board of Crawford County, Illinois, and thereafter filed a record in the Crawford County Courthouse or the Crawford County Recorder's Office. So, therefore, Emerald Lake was, in fact, included on the subdivision plat along with the individual lots, Lots 1 through 18 and a larger Tract A. A second factual issue that we believe was misstated in the opening argument was that Lot 17, which is the residential property of my client, that is, Ms. Francis, was unimproved at the time of her acquisition of that property. In fact, Lot 17 was conveyed to a Kirk Wiry in 1995, and immediately thereafter, a home was constructed on that property. When Mary Jean Francis acquired the property thereafter, there was a residence there, and as we indicate in our briefs, it is undisputed that the lake was used at the time that Mr. Wiry acquired the property. So, we do not want to leave the court with the impression that Lot 17 was an unimproved vacant lot until Mary Jean Francis acquired it. Now, those facts are important as they relate, first of all, to this chain of title issue. Again, Mr. Thomas characterizes this as a chain of title, as we indicate in our brief. This is essentially an argument that his client, Ms. Urban, acquired her acreage without notice that there may have been easement rights, incidental easement rights to Emerald Lake, incidental to the surrounding adjacent lots. And our argument, as set forth in our brief, we believe persuasively shows that, in fact, Pamela Urban had both record and inquiry notice that Emerald Lake existed, that it was part of a subdivision plot, that incidental to that were bylaws for Emerald Lake Corporation, which were recorded simultaneously, contemporaneously with the subdivision plot, which expressly gave to owners or lessees of subdivision lots the right to use Emerald Lake. All of that was of record. It was of record long before Pamela Urban acquired this property. So the argument that this is not in Ms. Urban's chain of title simply is not valid because it was. And the case that one of the cases that we rely upon is Abashur versus Zobrist. That is to say, in Abashur case, as in this case, we had common owners. In this case, we have the Zinks as the common owners. In Abashur, there was a common owner of a tract. If you look at the deed that was given by Zinks to Ms. Urban, you will see that the property is described as a 40-acre tract. And in the specific legal description in that deed, it accepts out the lots that are within the subdivision. And it specifically references the recording information for that subdivision plot and the corporate bylaws. Furthermore, it states that she is taking the property from the Zinks subject to all easements, restrictions, and covenants of record. That is record notice to her. That is in her chain of title. Her chain of title began with the Zinks common ownership of the 40 acres. Those are exceptions which would have been investigated and shown of record to create rights to the lot owners in the subdivision as to the use of Emerald Lake. And the bylaws specifically state that the lot owners or lot lessees have the right to use Emerald Lake. Counsel? Yes, sir. Was your client using Emerald Lake, and is there anything in the record to indicate that Urban had notice of that? Absolutely. It is undisputed, it is uncontested, based upon the affidavits and depositions on file which were made part of the record for purposes of summary judgment, that Mary Jean Francis and her companion Michael Cook had used the lake for purposes of fishing and other recreational use immediately upon their acquisition of the property. Moreover, it was undisputed that Pamela Urban and her husband Michael Urban were aware of their use at that time. And in fact, it is undisputed that after the Urbans acquired their property in 2012, that Mary Jean Francis and her companion Mr. Cook continued to use Emerald Lake for a period of six years. That is, from 2012 to 2018, and not until 2018, did Ms. Urban voice any objection to the use of Emerald Lake by Mary Jean Francis, or in fact from anyone else. So the record is undisputed on the actual use of Emerald Lake prior to 2018. There is also inquiry notice by Ms. Urban. That is to say, and this relates in part to Justice Overstreet to your question, they were put on notice simply by the fact that when Urbans negotiated with the Zinks, they were out on a boat fishing on the lake. Mr. Urban, Pamela Urban's husband, concedes in his deposition that he presumed that Ms. Francis and Mr. Cook had the right to use Emerald Lake. So there is no question that Urban had inquiry notice. That is, and as we indicate in our brief, facts were before them which would have, a prudent purchaser would have investigated further to determine what rights might be incidental to Emerald Lake. So now, before I finish, I do want to address briefly the issue in regard to preparium law. First of all, contrary to counsel's argument, Alderson v. Fatlin does not, does not rule contrary to Rochetta v. Hoyer. To the contrary, the Supreme Court actually cites Rochetta v. Hoyer as a rationale for finding rights to man-made bodies of water other than through preparium law. The appellant's position is that lake rights to man-made bodies of water can only arise through preparium law doctrine. The Supreme Court of Illinois did not hold that, and in fact, in its final paragraph in its decision, referred to Rochetta v. Hoyer as another possible means by which rights could attach to a lake. The reason the Supreme Court did not base its decision upon Rochetta is that that argument or that position had not been advanced by the parties, so therefore they did not address it in their decisions. However, in no way did the Supreme Court look adversely to Rochetta v. Hoyer. Finally, Your Honor, we would argue that there is, in fact, an exception to the general preparium law which is set forth in Alderman, which is that if there has been a long preexisting use of a man-made body of water, the doctrine may apply, and that's what they did in Alderson. There it was 40 to 50 years. Here in this case, Your Honor, there was lake use for a period of 23 years by the Zinks, by my client Mary Jean Francis, by her companion Mike Cook, and by other individuals. And it was only after 23 years that Pamela Irvin objected to the use of this lake for recreational use. At this time, Your Honor, unless there are questions, I will now yield to Attorney Carraway to address the other issues in the appellant's argument. Thank you. Good afternoon, Your Honors.  As noted by Mr. Neal, I represent Emerald Lake Estates Corporation, which was initially named as a defendant in the suit, as well as Lee and Gisla Zink, who were named as third-party defendants. First, I believe Mr. Neal pointed this out, but I do want to just confirm to this court that Emerald Lake was created contemporaneously with the subdivision. Essentially, my client, the Zinks, developed and created Emerald Lake, which was not in existence before 1994, at the same time subdivided this property. And it's clear in the bylaws, as we noted, that the lake was created for the benefit of the use for the subdivision. So when we're looking at the facts discussing Rochetta and this Granite Properties case, I just want to keep that in mind. So Rochetta, they're indicating that the analysis of Rochetta is incorrect. So let's talk about, first, the facts there a little bit. In that case, Irvin is trying to indicate that it's somehow different than this case because there was an express reservation of rights. But in reality there, the court focused on the deed from the initial owners, which were the Bonds, to Hoyer. And that deed is completely silent as to whether Hoyer had the right to use June Lake. So with that in mind, the court determined that there was an impertinent easement and recognized that when an owner of a tract of land divides it into different parts, in such a manner that one part derives from another an advantage of a permanent, open, and physical character, and afterwards sells a part of the property, the purchaser takes the part sold with all the benefits and burdens that appear at the time of the sale. The Rochetta court further explained that the impertinent easement runs with the land and passes by conveyance of the land, even without being mentioned in the instrument of transfer, which is what happened there. And that's also what's happened here. So applying those records, the court found that it was evident that June Lake was created to benefit the land which surrounded it, and that the tract of land bordering the lake derived open and visible benefits from the lake. The court noted that the Bonds sold the tract to Hoyer without mentioning the incidental right to use the lake. However, the court found that the right of the recreational use of the lake is essential to the beneficial enjoyment of the tract purchased by Hoyer. It held that at the time of the sale, the use of the lake for recreational purposes was established, was visible to anyone dealing with the property, and conferred a considerable benefit upon the tract purchased by the defendant. Essentially, the court found that the purchase of the property was for as much to use the lake as it was to own the property. And that's exactly the circumstances at issue here. My client developed the lake and the subdivision contemporaneously, and the lake was essentially developed for the benefit of the subdivision. And counsel, to that point, if my notes are correct, when they formed the corporation and had that recorded, the bylaws expressly conferred upon the members the right to fish, boat, and swim in the lake, correct? That is correct, and actually that goes to my next point, your honor. Irvin is arguing that the Rocada decision and the decision by the trial court here is incorrect because it didn't follow the rules set out for an applied easement in that Granite Properties case. But in reality, they did follow those rules. First, I would like to note that the Rocada decision, the court specifically found that the recreational use of the property was preexisting at the time the property was sold. The same is true here. They developed the lake so it could be used by the subdivision. The use was created as soon as the lake was developed, and the bylaws confirm that. They make a big deal of the fact that the lake was never deeded into the corporation, but just for purposes of clarification, the corporation was incorporated for basically a homeowners association. It wasn't the subdivision. The subdivision was the lake and the lots. Now, as the lots were sold, they were supposed to be deeded in and leased out, but essentially it was because they were forming a homeowners association in that manner. It's not disputed that most of the subdivision lots are not in the corporation, but they're still part of the subdivision just as the lake was. Going back to the Granite Properties, just like in Rocada here, again, the use was preexisting because it's the purpose for which the lake was built. I also want to point out that as counsel, as Mr. Neal did, that Irvin argues that the analysis in Rocada is wrong and that it should have followed Granite Properties. Well, as I said, it did, although it didn't specifically reference that case. But as Mr. Neal pointed out, the Supreme Court in Alderson, which is a later decision in 2008, specifically cited to the Rocada decision as a way that you could obtain rights to a lake without going through riparian rights. If the analysis in Rocada was flawed, I can't imagine that the Supreme Court would cite to it the proposition that it's a way you can obtain rights. So, I believe I've addressed all the points with respect to Granite Properties and with respect to the Rocada decision. We would ask the court that the summary judgment enter on behalf of the Zinks and Francis be upheld and that it be clarified that they do have rights to use the lake. Do any of the justices have questions? No questions. Thank you, counsel. Counsel, you're on mute. Go ahead. No, you're still muted. Oh, there you go. Can you hear me okay now? Now we got you. Okay, thank you. We would point out, Your Honor, that Granite Properties set forth the three elements that must be established. And the critical second element is used by one parcel, the lots, in connection with use of the lake at the time the title was severed. Mr. Neal pointed out there is a home on lot 17. But that title was severed in 1995 when Zink needed lot 17 to the corporation, which subsequently leased it to Wyrie. The lot was vacant at that time. All of the other lots remained vacant. And what use could the vacant lots make in connection with the lake that were continuous, permanent, obvious, or apparent? We would point out that's the critical time at the time of severance of title. Judge Weber in the trial court said that the bylaws of which Mr. Neal talked do not apply to the Zinks, to Francis, or to Irvin, because the corporation did not own the lake. So those bylaws are irrelevant. Remember, Your Honors, I told you that this lake is located in a rural area. Mr. Neal said there was use of the lake over 23 years. Well, from 1994 till 2012, Zinks owned the lake. Certainly they had the right to use the lake. And if Francis or her friend, Mr. Cook, used the lake occasionally, and it's a rural area, there's no way in the world that Irvin would know that Cook or Francis were not using the lake with the consent of the lake owner, Zinks. Now, the Alderson decision talks about an open, continuous use for a period of 40 to 50 years. That's not present in this case, Your Honor. There is no law, or the facts of this case do not support the doctrine of artificial becomes natural with respect to riparian rights. Let me point out also that Zinks had four opportunities to grant the landowners the right to use the lake. Zinks owned the lake. When Zinks sold Lot 17 to Wiry or leased it to them, Zinks could have granted Wiry an easement for the use and enjoyment of the lake. Zinks didn't do that. When Zinks conveyed Lots 10 and 11 to Cooks, they could have granted an easement for the right to use and enjoyment of lakes. Zinks did not. When Zinks deeded the property to Irvin, or to Francis, they could have granted an easement. They didn't. When Zinks transferred the lake to Irvin, Zinks could have reserved the right to use the lake for the lot owners in the subdivision. But had Zinks made that reservation, there's no way in the world Irvin would have bought that lake, knowing that Irvin had the responsibility to maintain the lake, whatever liability was associated with the lake, for not only himself, but 18 other potential homeowners and their invitees. No one would be that foolish to have purchased a lake under those circumstances. Lee Zink told Michael Irvin, you are buying a private lake. He said that three times, Irvin would never have purchased the lake, had not been represented to Irvin, that Irvin was buying a private lake. The average age was between Zink and Pamela Irvin's husband. The lake is titled in the name of Pamela Irvin. And that's, that's what we have to say in response to the other arguments of the deputies. Thank you very much. Thank you guys. The court will take the case under advisement and order will be issued due course. You're excused. Thank you. Thank you.